CERTIFIED COPY



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

C.A No. 05-058-S

---

DEPOSITION OF MADELINE WAGNER
September 14, 2005

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

ELITE DESIGNS, INC., a Rhode Island corporation, and ANTHONY ANTONELLI, individually and as an officer of the corporation,

Defendants.

---

A P P E A R A N C E S

For the Plaintiff: AMY E. GOLDFRANK, ESQ.
U.S. Department of Justice
1331 Pennsylvania Avenue, N.W.
Suite 950 North
Washington, D.C. 20004

For the Defendants: STEPHEN J. REID, JR., ESQ.
Blish & Cavanagh
Commerce Center
30 Exchange Terrace
Providence, Rhode Island 02903

EXHIBIT "A"

Deposition of MADELINE WAGNER, the Witness herein, called by the Plaintiff in the above-entitled matter on Wednesday, the 14th day of September, 2005, commencing at the hour of 9:23 a.m., at 1225 17th Street, Suite 500, Denver, Colorado, before Angie A. Baca, Registered Professional Reporter and Notary Public within and for the State of Colorado, said deposition being taken pursuant to Subpoena and Notice and the Federal Rules of Civil Procedure.

---

I N D E X


| | Page Number |
|---|---|
| Examination by Ms. Goldfrank | 3, 112, 118 |
| Examination by Mr. Reid | 83, 116 |


E X H I B I T S


| Exhibit Number | | Initial Reference |
|---|---|---|
| 1* | The Designer Collection | 57 |
| 6* | Collection Script | 50 |
| A | Designer Scents Packet | 86 |
| B | Designer Scents Authorized Distributor | 86 |
| C | Business Opportunity Disclosure Memorandum | 86 |
| D | Letter to Dansky from Sharon | 86 |
| E | Letter to Wagner from Goldfrank, 8/16/05, Re: United States v. Elite Designs, Inc., et al., with attachments | 86 |


*Exhibit marked prior to the commencement of the deposition. Original exhibit retained by Ms. Goldfrank; photocopy substituted

91

Q You never had any conversations in person with Attorney Goldfrank prior to today, right?
A No.
Q How many other telephone conversations did you have with Attorney Goldfrank after that first one?
A Oh, another one for the subpoena, and then another one to be sure that I was going to be here for today.
Q Now, after you were contacted by Attorney Goldfrank, did you have any conversations with anyone else about the fact that you had spoken with attorney Goldfrank?
A My daughter.
Q Okay. What did you talk to your daughter about? That's Desiree?
A Yes.
Q What did you talk to your daughter about?
A I just told her that Attorney Goldfrank had called me, and she said okay.
Q Did you tell her what you talked with Attorney Goldfrank about?
A No. She doesn't even know I'm here today.
Q After you spoke to Attorney Goldfrank, have you had any conversations with Mr. Wattu?
A No.

92

Q Have you attempted to contact Mr. Wattu?
A No.
Q Do you know where Mr. Wattu presently resides?
A I believe it's Massachusetts. I'm sure if I looked in my phone book, I could find the address.
Q Okay. Would you do that for us, please. And I'm going to give you my business card right now. And when you find that address, would you provide that address to me? And I assure you that when I get that information, I will pass it along to Attorney Goldfrank.
A You bet.
Q Okay. Now, have you spoken with an attorney about the fact that you've been subpoenaed to this deposition?
A No.
Q And you're not represented by an attorney in connection with this matter, are you?
A No.
Q What did you do, if you did anything, to prepare for the deposition today?
A I didn't do anything.
Q Well, you --
A I got what I could find --
Q You looked for the documents we've marked as Defendants' A, B, C, and D for identification, right?

93

A Right. I said that, you know, I would tell whatever I knew or thought I knew, but that I don't know that anything that I know is what I know. I'm sorry. I know that it sounds crazy, but I only know, like I said, one side of the story.
Q You know what you've been told by Ron Wattu?
A Exactly.
Q Because Ron Wattu is the only person you've ever spoken to about these matters; is that right?
A Exactly.
Q You've never spoken to Anthony Antonelli?
A I have not.
Q You've never met Anthony Antonelli?
A I have not.
Q When I say you've never spoken to Mr. Antonelli, you've not spoken to him by telephone, correct?
A I have not.
Q Or spoken to him in person, right?
A I have not.
Q Have you sent any written correspondence to him?
A No.
Q Has he sent any written correspondence to you?
A My checks.

94

Q Anything other than checks?
A No.
Q So the only person that you've ever either spoken with or dealt with on the subject of the jewelry display rack businesses is Ron Wattu?
A Right.
Q Correct?
A Correct.
Q And it was Mr. Wattu who made the arrangement with you as to what your commission would be as a fronter; isn't that right?
A Yes.
Q And it was Mr. Wattu who was the person who told you what to say as a reference; isn't that right?
A That's correct.
Q All right. Have you ever been to the state of Rhode Island?
A No. Well, I may have when I was a kid, but I don't remember it. I'm originally from New York.
Q The script that you referred to, Government Exhibit 6, and you said there were a couple of other variations of this document --
A There are, depending on the product.
Q -- with respect to jewelry?
A Right. Well, there was one that was before

Q Are you personally aware, Ms. Wagner, of any complaints expressed to you with respect to the jewelry display rack distributors?
A No.
Q Now, I know you've testified repeatedly today that you've never had any conversations, either in person or by telephone, with Mr. Antonelli, correct?
A That's correct.
Q You have some general recollection of possibly speaking to someone named Mitch, but you don't know the person's last name; is that right?
A That's right.
Q And also some general recollection of conversations with Phyllis?
A Right.
Q But you're not sure what the extent of those conversations would be?
A It would only have been to send out a package.
Q Is there anyone who you know, as you sit here today, who was an employee of Elite Designs that you ever spoke with?
A Well, if Mitch was an employee, I spoke with -- do you mean other than work or --
Q About anything, at any time.
A The only thing would be if somebody did not



receive a package, whoever was doing packages for me, to call them and say, so-and-so didn't receive a package, and they'd go, "Okay," and gave me the information again, and that would be it.
Q And you testified to a question by Attorney Goldfrank that you had received some pages describing the jewelry products, correct?
A Yeah --
Q You never got the complete document that's Government Exhibit 1?
A I did not receive pages, I received the same package that people received, okay, that the potential customer would receive in color, yeah, so basically with the pictures and things on it. But a lot of other stuff wasn't in it, it was just for me to see the product.
Q And that was sent to you by Ron Wattu?
A That was, yeah. Yeah, everything was sent by Ron Wattu. Anthony never sent me anything except my check.
Q And there was another name of a person you persuaded to act as a reference, posing as a distributor. Was it Cleo?
A It was Cleo Christoffersen.
Q Who is that?
A He worked with me at High Country Vending and



Mile High Vending, and he had been asking if there was anything that he could do, basically, with Elite Designs. And I said, "Well they're looking for references right now. If you want to do that, talk to Ron." And he did.
Q So you told Cleo that if he was interested in doing reference work, he should speak with Ron Wattu?
A Right.
Q And did you also tell your daughter, Desiree, that if she was interested, that she should speak to Ron Wattu, or did you tell your daughter what to do?
A Oh, no, Ron Wattu did.
Q Now, shortly after the break, Attorney Goldfrank asked you if you had ever posed as a mortician?
A Yes. I did not.
Q You didn't pose as one, you were one?
A I was one.
Q How long ago?
A Oh, a lot of years ago. Let's see. From 1975 to 1978, and then my son was born. And I didn't do anything again until 1988 to probably about '92. On and off.
Q Was this in a private setting as opposed to for the government, for example?
A Oh, yes.
Q And that's a position for which you need to be



licensed by the state?
A I had an apprentice license here.
Q In Colorado.
A Yeah, in Colorado, and then we went under the grandfather's clause. You don't need a license in the state anymore. I worked for Service Corporation International.
Q And what were the circumstances of your ceasing your activities as a mortician? Was that voluntary or involuntary?
A Oh, it's voluntary. I have a bad back, and I had kids to take care of, and the hours were excruciating.
Q You're not presently employed because of your three absences?
A Yeah. I probably will be again next week. I just have to file a complaint.
Q File a complaint with whom?
A We have a thing, you can't have more than three occurrences in a period of six months; otherwise, it's termination.
Q So an internal complaint with the company?
A Yeah.
Q Now, after you stopped serving as a fronter or a reference with respect to the jewelry display rack

A No.
Q Could you fire people?
A No.
Q And you only worked for Elite Designs and the other companies during the time period we've been discussing, from 2003 to October 2004?
A Right.
MR. REID: Objection, move to strike.
MS. GOLDFRANK: Okay. That's it.
MR. REID: For me too.

(The witness's right to read and sign the above-transcribed deposition was expressly waived by the witness.)

(The deposition was concluded at 12:00 p.m., on Wednesday, September 14, 2005.)



DEPOSITION OF
MADELINE WAGNER

REPORTER'S CERTIFICATE

I, Angie A. Baca, Registered Professional Reporter and Notary Public in and for the State of Colorado, do hereby certify that prior to the commencement of the examination, the Witness was by me first duly sworn to testify the truth, that said deposition was taken in shorthand by me at the time and place hereinabove set forth and was thereafter reduced to typewritten form by me, as per the foregoing transcript; that the same is a full, true, and correct transcription of my shorthand notes then and there taken.

I further certify that I am not related to, employed by, nor of counsel for any of the parties or attorneys herein, nor otherwise interested in the event of the within action.

My commission expires July 21, 2007; and I have hereunto set my hand this September 23, 2005.

______________________________
Registered Professional Reporter
and
Notary Public